**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARLA ARAMOUNI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DATAVAULT AI INC., BRETT MOYER, NATHANIEL T. BRADLEY, and GARY WILLIAMS,<br><br>Defendants. | Case No. 2:26-cv-05548-JS |
| VAN ZENG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DATAVAULT AI INC., BRETT MOYER, NATHANIEL T. BRADLEY, and GARY WILLIAMS,<br><br>Defendants. | Case No. 2:26-cv-07424-JS |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF JOSEPH MORRONE AND GIANNA MORRONE FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF CO-LEAD COUNSEL**

Joseph Morrone and Gianna Morrone (together, the "Morrones") respectfully submit this memorandum of law in support of their motion pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq*. (the "PSLRA") and Federal Rule of Civil Procedure 42(a) for an Order: (1) consolidating the above-captioned related actions; (2) appointing the Morrones as Lead Plaintiff under 15 U.S.C. § 78u-4(a)(3)(B); (3) approving the Morrones' selection of Glancy Prongay Wolke & Rotter LLP ("GPWR") and Holzer & Holzer, LLC ("Holzer") as Co-Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v); and (4) granting such other relief as the Court may deem to be just and proper (the "Motion").

## I. PRELIMINARY STATEMENT

This class action is on behalf of all persons and entities other than the defendants that purchased or otherwise acquired Datavault AI Inc. ("Datavault AI," or the "Company") securities between September 4, 2024 and August 18, 2026, both dates inclusive (the "Class Period").

The PSLRA directs that the Court shall appoint the "most adequate plaintiff"—the plaintiff most capable of adequately representing the interests of class members—as lead plaintiff, and provides a presumption that the person or group of persons with the largest financial interest in the relief sought by the class who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") is the most adequate plaintiff.

The Morrones believe that they are the "most adequate plaintiff" as defined by the PSLRA and should be appointed as lead plaintiff based on their financial losses suffered as a result of Defendants' wrongful conduct as alleged in this action. In addition, for purposes of this motion, the Morrones satisfy the relevant requirements of Rule 23, as their claims are typical of other class members' claims and they are committed to fairly and adequately representing the interests of the class. Thus, pursuant to the PSLRA's lead plaintiff provision, the Morrones

respectfully submit that they are presumptively the most adequate plaintiff and should be appointed as lead plaintiff for the class.

Additionally, the Morrones' selection of GPWR and Holzer as co-lead counsel for the class should be approved because the firms have substantial expertise in securities class actions, and the experience and resources to efficiently prosecute this action.

## II. FACTUAL BACKGROUND

Datavault AI is a technology licensing company that owns a portfolio of patented, secure platforms designed to redefine how data is managed, valued, and monetized. Datavault AI purportedly owns and operates data management platforms including its Datavault Platform, on which users may purchase or sell data tokenized using blockchain technology. Datavault AI was previously known as WiSA Technologies, Inc. ("WiSA"). On September 4, 2024, WiSA issued a press release announcing that it had agreed to acquire the intellectual property of Data Vault Holdings Inc., including, *inter alia*, the Datavault Platform, for $210 million, and that, upon closing this acquisition, it intended to appoint Defendant Nathaniel T. Bradley ("Bradley") as its Chief Executive Officer. On February 13, 2025, WiSA announced that it had changed its name to Datavault AI.

The complaints allege that throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants had overstated the economic value to Datavault AI of its various corporate partnerships with, *e.g.*, Burke Products ("Burke"), Scilex Holding Company ("Scilex"), and Nature's Miracle Holding Inc. ("Nature's Miracle"); (ii) Defendants had overstated the volume of trading activity on the Datavault Platform, which in fact was minimal; (iii) the Company's undisclosed connections with Edward Withrow III ("Withrow"), a convicted

felon, when revealed, would cause Datavault AI to incur reputational harm; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

The truth began to emerge on October 31, 2025, when Wolfpack Research published a research report on Datavault AI (the "Wolfpack Report"). The Wolfpack Report alleged, among other things, that Datavault AI was a "stock promotion" that relied on misleading press releases and "empty claims" concerning artificial intelligence, quantum computing, Web 3.0, and data monetization, and that Datavault AI's previously announced purported partnerships could not offer the economic upside that Defendants claimed they would. The Wolfpack Report also questioned the activity on the Company's blockchain marketplace, alleging that Datavault AI's platform had virtually no trading activity, and raised concerns about Datavault AI's leadership and affiliations, including Defendant Bradley's past SEC charges for false statements and Company leadership's alleged connections with Withrow. On this news, Datavault AI's stock price fell $0.49 per share, or 19.44%, to close at $2.03 per share on October 31, 2025.

Defendants denied the allegations and warnings in the Wolfpack Report, and thereafter, they continued to make false and/or misleading statements and/or failed to disclose that: (i) Defendants had overstated the economic value to Datavault AI of its various corporate partnerships with, *e.g.*, Scilex, Burke, and Nature's Miracle; (ii) Defendants had overstated the status and volume of trading activity on the Datavault Platform, which was in fact minimal; and (iii) Defendants had misrepresented the Company's working capital and liquidity position, and the Company's ability to continue as a going concern had not been alleviated.

On April 27, 2026, Defendants issued a press release announcing the execution of a "Binding Term Sheet" for a $120 million cash contribution from Scilex, and stating that Datavault AI "projects $200M+ infusion of cash without equity dilution." Six days later, on May

3, 2026, Defendants entered into a securities purchase agreement providing for the sale of 109,090,910 shares of Datavault AI common stock at $0.55 per share, which was announced before the start of trading on May 4, 2026. The offering price represented a discount of approximately 26% to the Company's closing price of $0.7438 per share on May 1, 2026. On this news, the price of Datavault AI common stock declined approximately 24.7%, falling $0.1838 per share from May 1, 2026 to close at $0.56 per share on May 4, 2026, on volume of more than 237 million shares.

On July 22, 2026, Datavault AI announced that it would host its first Analyst & Investor Day on August 4, 2026. Then, without public notice or explanation, Datavault AI failed to proceed with its Investor Day, removing the Investor Day press release from the Company's website. As a result, the price of Datavault AI common stock fell 23.96%, closing at $0.2825 on August 5, 2026.

Before the market opened on August 19, 2026, Defendants issued the Company's second quarter 2026 results, announcing a loss of $0.12 per share, far worse than the expected $0.03 loss, and a net loss of $88 million, more than twice the $37.1 million loss reported a year earlier. Defendants revealed that, despite their prior assurances, they were still in the process of "assembling the technology, infrastructure and strategic capabilities required to bring Datavault AI's platform to market at scale," and that the Company would not be launching its exchanges or "converting our contracted opportunities into commercial activity and recognized revenue" until the second half of 2026. The Company also announced that "the substantial doubt about the Company's ability to continue as a going concern has not been alleviated." On this news, the price of Datavault AI common stock declined approximately 23.40%, or $0.0905 per share, from

a close of $0.3867 per share on August 18, 2026 to a close of $0.2962 per share on August 19, 2026, on volume of more than 201 million shares.

As a result of the Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, class members suffered significant losses and damages.

## III. PROCEDURAL BACKGROUND

On August 5, 2026, Plaintiff Carla Aramouni commenced a securities fraud class action against Datavault AI and certain of its officers, captioned *Aramouni v. Datavault AI Inc.*, No. 2:26-cv-05548-JS (the "*Aramouni* Action"). The *Aramouni* Action asserts claims under Sections 10(b) and 20(a) of the Exchange Act on behalf of all persons and entities that purchased or otherwise acquired Datavault AI securities between September 4, 2024 and October 30, 2025, inclusive.

On September 25, 2026, Plaintiff Van Zeng commenced a similar action against the same defendants, captioned *Zeng v. Datavault AI Inc.*, No. 2:26-cv-07424-JS (the "*Zeng* Action," and together with the *Aramouni* Action, the "Related Actions"). The *Zeng* Action asserts the same claims under Sections 10(b) and 20(a) of the Exchange Act, but proposes an expanded class period of September 4, 2024 through August 18, 2026, inclusive, and pleads additional alleged misstatements and corrective disclosures. Both Related Actions are assigned to this Court and have been designated as related.

## IV. ARGUMENT

### A. The Related Actions Should Be Consolidated

Consolidation pursuant to Federal Rule of Civil Procedure 42(a) is proper when actions involve common questions of law and fact. The PSLRA likewise contemplates that where "more than one action on behalf of a class asserting substantially the same claim or claims" has been

filed, the Court will decide any motion to consolidate before appointing a lead plaintiff for the consolidated actions. 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Both of the Related Actions present similar factual and legal issues, as their claims overlap. Each action is brought against the same defendants, each alleges violations of Sections 10(b) and 20(a) of the Exchange Act, each presents similar theories for recovery, and each is based on the same alleged course of conduct, including the October 31, 2025 disclosure. That the *Zeng* Action alleges a longer class period and additional corrective disclosures does not alter the common questions of law and fact the Related Actions share. Because these actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Federal Rule of Civil Procedure 42(a) is appropriate. *See O'Meara v. Shift4 Payments, Inc.*, No. 23-cv-03206, 2023 WL 7276491, at *3 (E.D. Pa. Nov. 3, 2023) ("The Court finds consolidation appropriate as the Related Actions concern common question of law and fact.").

**B. The Morrones Should Be Appointed Lead Plaintiff**

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"—*i.e.*, the plaintiff most capable of adequately representing the interests of the class—is the class member that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). As set forth below, the Morrones satisfy all of the PSLRA criteria and have complied with all of the PSLRA's requirements for appointment as lead plaintiff. The Morrones have, to the best of their knowledge, the largest financial interest in this litigation and meet the relevant requirements of Federal Rule of Civil Procedure 23. In addition, the Morrones are not aware of any unique defenses Defendants could raise against them that would render them inadequate to represent the class. Accordingly, the Morrones respectfully submit that they should be appointed lead plaintiff.

**1. The Morrones Filed a Timely Motion**

The Morrones have made a timely motion in response to a PSLRA early notice. Pursuant to Section 21D(a)(3)(A)(i) of the Exchange Act, on August 6, 2026, notice was published in connection with this action, informing investors that they had until October 5, 2026 to file a lead plaintiff motion. *See* Declaration of Lee Albert in Support of the Motion of Joseph Morrone and Gianna Morrone for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Co-Lead Counsel ("Albert Decl."), Ex. A. As purchasers of Datavault AI securities during the Class Period, the Morrones are proper plaintiffs and have hereby timely filed a motion for appointment as lead plaintiff within sixty days of the notice, in compliance with the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

Additionally, as set forth in their PSLRA certifications, the Morrones attest that they have reviewed a complaint against Datavault AI, authorize the filing of a comparable complaint on their behalf, and are willing to serve as representative parties on behalf of the class. *See* Albert Decl., Ex. B. Accordingly, the Morrones satisfy the first requirement to serve as lead plaintiff for the class.

**2. The Morrones Have the Largest Financial Interest**

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). At the time of this filing, the Morrones believe that they have the largest financial interest among class members who filed timely applications for appointment as lead plaintiff and are presumed to be the "most adequate plaintiff."

The Morrones purchased Datavault AI securities during the Class Period at prices alleged to be artificially inflated by Defendants' misstatements and omissions and, as a result, suffered financial harm of approximately $59,554.74. *See* Albert Decl., Ex. C. To the best of their knowledge, the Morrones are not aware of any other class member that has filed a motion for appointment as lead plaintiff who claims a larger financial interest. As such, the Morrones believe they have the largest financial interest in the relief sought by the class, and thus satisfy the second PSLRA requirement to be appointed as lead plaintiff for the class. *See McDermid v. Inovio Pharms., Inc.*, 467 F. Supp. 3d 270, 277 (E.D. Pa. 2020).

**3. The Morrones Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule

23 of the Federal Rules of Civil Procedure." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, "the court's initial inquiry should be confined to determining whether such movants have stated a *prima facie* case of typicality and adequacy." *Cendant*, 264 F.3d at 264.

**a) The Morrones' Claims Are Typical**

The Rule 23(a) typicality requirement is satisfied when a plaintiff's circumstances are not "markedly different" from other class members' and his claims are based on the same legal theory as other class members' claims. *Id.* at 265.

The Morrones' claims are typical of the claims asserted by the proposed members of the class. Like all members of the class, the Morrones allege that Defendants' material misstatements and omissions concerning Datavault AI's business, operations, and financial prospects violated the federal securities laws. The Morrones, like all members of the class, purchased Datavault AI securities in reliance on Defendants' alleged misstatements and omissions and were damaged thereby. Accordingly, the Morrones' interests and claims are "typical" of the interests and claims of the class.

**b) The Morrones Are Adequate Representatives**

The adequacy requirement is satisfied if the movant has the ability and incentive to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between the movant's claims and those asserted on behalf of the class. *Id.*

The Morrones have demonstrated their adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this action, and their financial losses ensure that they have sufficient incentive to provide vigorous advocacy. *See* Albert Decl., Exs. C, D, E. The Morrones are a married couple. Joseph Morrone is the founder and President of DreamLife Processing, a mortgage processing company. He holds a Bachelor of Science degree and an MBA, and has approximately five years of investing experience. Gianna Morrone is a Registered Nurse who holds a Bachelor of Science degree. She has approximately one year of experience investing in the markets, in addition to managing her retirement account investments. The PSLRA expressly permits a "group of persons" to serve as lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and the Morrones, a small group of two related investors, are well positioned to confer with one another and to jointly direct and oversee counsel in the prosecution of this action. The Morrones are moreover not aware of any conflict between their claims and those asserted on behalf of the class. As such, the Morrones are well-equipped to represent the class, and should be appointed as lead plaintiff.

**C. The Court Should Approve Lead Plaintiff's Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cendant*, 264 F.3d at 274. Here, the Morrones have retained GPWR and Holzer as co-lead counsel to pursue this litigation. GPWR recently obtained final approval of a $433.5 million settlement on behalf of Alibaba Group Holding Limited investors, and final approval of a $120 million settlement on behalf of

ViacomCBS Inc. investors. The firm's success on behalf of investors was recognized by Law360, which named the firm one of the 2025 Law360 Securities Groups of the Year. Both GPWR and Holzer possess extensive experience in securities class actions and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors, as reflected by the firms' résumés attached to the Albert Declaration as Exhibits D and E. Thus, the Court may be assured that, by granting the Motion, the class will receive the highest caliber of legal representation.

## V. CONCLUSION

For the foregoing reasons, the Morrones respectfully request that the Court grant their Motion and enter an Order (1) consolidating the Related Actions; (2) appointing the Morrones as Lead Plaintiff; (3) approving the Morrones' selection of GPWR and Holzer as Co-Lead Counsel for the class; and (4) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: October 5, 2026

**GLANCY PRONGAY WOLKE & ROTTER LLP**

By: *__/s/ Lee Albert__*

Lee Albert (PA ID #046852)
Rebecca Dawson
Glancy Prongay Wolke & Rotter LLP
745 5th Avenue, 5th Floor
New York, NY 10151
Telephone: (212) 935-7400
Facsimile: (212) 884-0988
Email: lalbert@glancylaw.com
rdawson@glancylaw.com

-and-

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: clinehan@glancylaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
1050 Crown Pointe Parkway, Suite 940
Atlanta, Georgia 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

*Counsel for Joseph Morrone and Gianna Morrone*
*and Proposed Co-Lead Counsel for the Class*

**PROOF OF SERVICE**

I, the undersigned, say:

I am not a party to the above case and am over eighteen years old.

On October 5, 2026, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of Pennsylvania, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 5, 2026, at Lafayette Hill, Pennsylvania.

*/s/ Lee Albert*
Lee Albert