**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARLA ARAMOUNI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>DATAVAULT AI INC., BRETT MOYER, NATHANIEL T. BRADLEY, and GARY WILLIAMS,<br><br>Defendants. | Case No. 2:26-cv-05548-JS<br><br>**CLASS ACTION** |
| VAN ZENG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>vs.<br><br>DATAVAULT AI INC., BRETT MOYER, NATHANIEL T. BRADLEY, and GARY WILLIAMS,<br><br>Defendants. | Case No. 2:26-cv-07424-JS<br><br>CLASS ACTION |

**CHRISTOPHER R. SHEPPARD AND BRIAN WEATHERFORD'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR: (1) CONSOLIDATION OF THE RELATED ACTION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD COUNSEL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 3

ARGUMENT .......... 6

I. THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES .......... 6

II. MOVANTS ARE ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS .......... 7

A. The PSLRA Standard For Appointing Lead Plaintiff .......... 7

B. Under The PSLRA, Movants Should be Appointed Lead Plaintiff .......... 8

1. Movants Filed a Timely Motion .......... 8

2. Movants Have the Largest Financial Interest in the Relief Sought by the Class .......... 9

3. Movants Meet Rule 23's Typicality and Adequacy Requirements .......... 10

III. MOVANTS' SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED .......... 12

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....8, 9, 10

*Dutton v. Harris Stratex Networks, Inc.*,
No. 08-755-JJF, 2009 WL 1598408 (D. Del. June 5, 2009)....6

*Ferreria v. Funko, Inc.*,
No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328 (C.D. Cal. June 11, 2020)....2

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012)....2

*Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*,
No. 3:15-cv-7350 (FLW) (DEA), 2016 WL 3032684 (D.N.J. May 26, 2016)....8, 11

*In re Party City Sec. Litig.*,
189 F.R.D. 91 (D.N.J. 1999)....9, 10, 11

*Patel v. Coinbase Glob., Inc.*,
No. 22-4915 (BRM) (LDW), 2022 WL 17582549 (D.N.J. Dec. 12, 2022)....7

*Quan v. Advanced Battery Techs., Inc.*,
No. 11 Civ. 2279 (CM), 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011)....11

*Quinn v. Ready Capital Corp.*,
No. 25 Civ. 1883 (PAE), 2025 WL 1883836 (S.D.N.Y. July 8, 2025)....9

*Rabin v. John Doe Mkt. Makers*,
254 F. Supp. 3d 754 (E.D. Pa. June 16, 2015)....10, 11

*Reitan v. China Mobile Games & Ent. Grp., Ltd.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014)....12

*Roby v. Ocean Power Techs.*,
No. 14-cv-3799 (FLW) (LHG), 2015 WL 1334320 (D.N.J. Mar. 17, 2015)....10

*Sklar v. Amarin Corp. PLC*,
No. 13-cv-06663 (FLW) (TJB), 2014 WL 3748248 (D.N.J. July 29, 2014)....6

*In re Vicuron Pharm., Inc. Sec. Litig.*,
225 F.R.D. 508 (E.D. Pa. 2004)....2

*Zak v. Chelsea Therapeutics Int'l, LTD.*,
780 F.3d 597 (4th Cir. 2015)....13

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)(i) ........ *passim*

**Other Authorities**

Fed. R. Civ. P. 6(a)(1)(C) ........ 9

Fed. R. Civ. P. 23(a)(4) ........ 11

Fed. R. Civ. P. 42(a) ........ 2, 6

Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020) ........ 15

Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020) ........ 15

Christopher R. Sheppard and Brian Weatherford ("Movants") respectfully submit this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Private Securities Litigation Reform Act of 1995 ("PSLRA"), in support of their motion for the entry of an Order: (1) consolidating the above-captioned, related actions;[1] (2) appointing Movants as Lead Plaintiff; and (3) approving Movants' selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.[2]

**PRELIMINARY STATEMENT**

The Action presently pending before this Court is brought on behalf of all persons and entities other than Defendants that purchased or otherwise acquired Datavault AI Inc. ("Datavault AI" or the "Company" together with Brett Moyer ("Moyer"), Nathaniel T. Bradley ("Bradley") and Gary Williams, the "Defendants") common stock between September 4, 2024 and October 30, 2025, inclusive (the "Class Period"), which seeks to recover damages caused by Defendants' violations of Sections 10(b) and 20(a) of the Exchange Act and Securities and Exchange

---

[1] The following two Actions are pending before this Court: (1) *Aramouni v. Datavault AI Inc., et al.*, No. 2:26-cv-05548-JS ("*Aramouni*"), which was filed on August 5, 2026; and (2) *Zeng v. Datavault AI Inc., et al.*, No. 2:26-cv-07424-JS ("*Zeng*"), which was filed on September 25, 2026. The *Aramouni* Action is brought on behalf of "all persons and entities other than Defendants that purchased or otherwise acquired Datavault AI securities between September 4, 2024 and October 30, 2025, both dates inclusive . . . seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 . . . and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials." *Aramouni*, Class Action Complaint ¶ 1, Dkt. No. 1 ("*Aramouni* Complaint"). The *Zeng* Action is brought on behalf of "all persons and entities who purchased or otherwise acquired Datavault AI common stock between September 4, 2024 and August 18, 2026, inclusive . . . against Datavault AI and certain of its senior officers to recover damages caused by Defendants' violations of the federal securities laws." *Zeng*, Complaint for Violations of the Federal Securities Laws ¶ 1, Dkt. No. 1 ("*Zeng* Complaint").

[2] Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of Timothy J. Peter filed herewith.

Commission ("SEC") Rule 10b-5 promulgated thereunder.[3]

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, the Court may consolidate the actions before it that involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2). The Actions may be consolidated as they allege violations of Sections §§ 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5, promulgated thereunder. The Actions also allege claims involving substantially similar facts. As the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the litigation" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see also In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (recognizing that the financial loss is the most significant of these factors).

With losses of $252,756.61, Movants, to the best of counsel's knowledge, have the largest financial interest in the litigation of any movant. Movants also satisfy Rule 23's typicality and

---

[3] For the purposes of "determining a lead plaintiff . . . the longer, most inclusive class period . . . is proper[.]" *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *see Ferreria v. Funko, Inc.*, No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328, at *2 n. 2 (C.D. Cal. June 11, 2020) (quoting *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009)) (finding the "use [of] the most inclusive class period" proper for the purpose of a lead plaintiff motion). Accordingly, the Class Period in the *Zeng* Complaint governs the appointment of a Lead Plaintiff for determining which movant possesses the largest financial interest.

adequacy requirements. Movants' claims are typical of the Class's claims because they suffered losses on their Datavault AI investments as a result of Defendants' false and misleading statements. Further, Movants have no conflict with the Class and will adequately protect the Class's interests given their significant stake in the litigation and their conduct to date in prosecuting the litigation, including their submission of the requisite certifications and selection of experienced class counsel. Accordingly, Movants are the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, Movants are entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movants have engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Movants' motion should be granted in its entirety.

## FACTUAL BACKGROUND[4]

Datavault AI is a Delaware corporation with principal executive offices located at One Commerce Square, 2005 Market Street, Suite 2400, Philadelphia, PA 19103. ¶ 21. From the beginning of the Class Period until February 2025, Datavault AI was known as WiSA Technologies, Inc. ("WiSA"). *Id.* Datavault AI and WiSA's common stock both traded in an efficient market on the Nasdaq Capital Market under the ticker symbols "DVLT" and "WISA." *Id.* Datavault AI is a technology licensing company that owns a portfolio of patented, secure platforms designed to redefine how data is managed, valued, and monetized in the modern era. ¶2.

---

[4] Unless otherwise noted, all references to "¶ __" are to the *Zeng* Complaint. The *Aramouni* Complaint contains substantially similar information.

Datavault AI purportedly owns and operates data management platforms including its Datavault Platform, on which users may purchase or sell data tokenized using blockchain technology. ¶ 3.

On September 4, 2024, WiSA issued a press release announcing that it had agreed to acquire the intellectual property of Data Vault Holdings Inc. ("Data Vault Holdings"), including, inter alia, the Datavault Platform, for $210 million. ¶ 4. WiSA further announced that, upon closing this acquisition, it intended to change its name to "Datavault Inc." and to appoint Defendant Bradley as its Chief Executive Officer. *Id.* Defendants did not disclose that the SEC had sued Bradley over false press releases issued by Parallax Health Sciences, Inc. ("Parallax"), where Bradley was Chief Technology Officer and a director, or that Bradley had consented to a judgment requiring him to pay a $40,000 civil penalty and prohibiting him for three years from participating in any offering of penny stock. *Id.* Nor did Defendants disclose that Edward Withrow III ("Withrow"), who is named as an inventor alongside Bradley on a family of patents originally assigned to Data Vault Holdings, is a convicted felon, having pled guilty to making false statements to the SEC during its investigation of a scheme to manipulate the stock of Endeavor Power Corporation, the company that was renamed Parallax and that later employed Bradley. *Id.*

On February 13, 2025, following its acquisition of the Datavault Platform, WiSA announced that it had changed its name to Datavault AI. ¶ 5.

On July 22, 2025, Datavault AI announced a corporate partnership with Burke Products ("Burke"), claiming that the partnership "stands to deliver 2025 Revenues from existing contracts of Burke's that have now been subcontracted to Datavault AI". ¶ 6.

On September 25, 2025, Datavault AI issued a press release announcing a corporate partnership with Scilex Holding Company ("Scilex") that would provide the Company with a

"$150 million strategic investment" from Scilex. *Id.*

On October 28, 2025, DatavaultAI announced a corporate partnership with Nature's Miracle Holding Inc. ("Nature's Miracle"), a sustainable agriculture and environmental technology company. ¶ 8. Pursuant to the agreement, Datavault AI would "receive a non-refundable license fee of $2 million and a 35 percent royalty on all gross revenue generated through the licensed technology." *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. ¶ 9. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants had overstated the economic value to Datavault AI of its various corporate partnerships with, e.g., Burke, Scilex, and Nature's Miracle; (ii) Defendants had overstated the volume of trading activity on the Datavault Platform, which in fact was minimal; (iii) the Company's undisclosed connections with Withrow, a convicted felon, when revealed, would cause Datavault AI to incur reputational harm; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times. *Id.*

The truth began to emerge on October 31, 2025, when Wolfpack Research published a research report on Datavault AI (the "Wolfpack Report"). ¶ 10. The Wolfpack Report alleged, among other things, that Datavault AI was a "stock promotion" that relied on misleading press releases and "empty claims" concerning artificial intelligence, quantum computing, Web 3.0, and data monetization. *Id.*

Defendants denied the allegations and warnings in the Wolfpack Report, and thereafter, they continued to make false and/or misleading statements and/or failed to disclose that: (i) Defendants had overstated the economic value to Datavault AI of its various corporate partnerships

with, e.g., Scilex, Burke, and Nature's Miracle; (ii) Defendants had overstated the status and volume of trading activity on the Datavault Platform, which was in fact minimal; and (iii) Defendants had misrepresented the Company's working capital and liquidity position, and the Company's ability to continue as a going concern had not been alleviated. ¶ 12.

Then, on August 19, 2026, before the market opened, Datavault AI issued its Q2 2026 results for the quarter ended June 30, 2026. ¶ 13. The Company announce poor results, including a loss of $0.12 per share, far worse than the expected $0.03 loss. *Id.*

On this news, Datavault AI's stock plummeted by 23.40% in a single day, on extremely high trading volume of more than 201 million. ¶ 14.

Through the Action, Movants seek to recover for themselves and absent class members the substantial losses that were suffered as a result of Defendants' fraud.

## ARGUMENT

### I. THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "[a]s soon as practicable after [the consolidation] decision is rendered[.]" *Id.*).

Consolidation is appropriate when the actions before the court involve a common question of law or fact. *See* Fed. R. Civ. P. 42(a); *Sklar v. Amarin Corp. PLC*, No. 13-cv-06663 (FLW) (TJB), 2014 WL 3748248, at *5 (D.N.J. July 29, 2014) (citing *Nanavati v. Burdette Tomlin Memorial Hosp.*, 857 F.2d 96, 103 n.3 (3d Cir. 1988)); *Dutton v. Harris Stratex Networks, Inc.*, No. 08-755-JJF, 2009 WL 1598408, at *1 (D. Del. June 5, 2009) (consolidating securities class

actions). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact or law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See Patel v. Coinbase Glob., Inc.*, No. 22-4915 (BRM) (LDW), 2022 WL 17582549, at *2 (D.N.J. Dec. 12, 2022) (consolidating actions asserting different claims against different defendants over different class periods).

The Actions at issue here clearly involve common questions of fact and law. The Actions assert claims under the Exchange Act on behalf of investors who were defrauded by the defendants. The Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements that artificially inflated the price of Datavault AI common stock and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Consolidation of the Actions is therefore appropriate. *See Patel*, 2022 WL 17582549, at *2 (finding consolidation appropriate despite differing class periods and different defendants where both actions "assert the same claims on behalf of Coinbase investors, based on substantially the same alleged conduct, for violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.").

## II. MOVANTS ARE ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A. The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to

move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*, No. 3:15-cv-7350 (FLW) (DEA), 2016 WL 3032684, at *3 (D.N.J. May 26, 2016) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)(II)).

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cendant Corp. Litig.*, 264 F.3d 201, 263-64 (3d Cir. 2001) (describing the PSLRA's process for determining the "most adequate plaintiff").

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cendant*, 264 F.3d at 268.

**B. Under The PSLRA, Movants Should be Appointed Lead Plaintiff**

As discussed below, Movants should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, Movants hold the largest financial interest of any movant, and Movants otherwise satisfy Rule 23's typicality and adequacy requirements.

**1. Movants Filed a Timely Motion**

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to publish notice within twenty (20) days of its filing. 15 U.S.C. § 78u-4(a)(3)(A)(i). Counsel for

first-filed plaintiff Carla Aramouni published notice of the lead plaintiff deadline via *Access Newswire* on August 5, 2026. *See* Ex. A; *see also Quinn v. Ready Capital Corp.*, No. 25 Civ. 1883 (PAE), 2025 WL 1883836, at *1 (S.D.N.Y. July 8, 2025) (finding publication in *ACCESS Newswire* sufficient to satisfy the PSLRA's notice requirement). Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice, *i.e.*, on or before October 5, 2026. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Given that the 60th day fell on a Sunday, October 4, 2026, Fed. R. Civ. P. 6(a)(1)(C) extends the deadline to Monday, October 5, 2026. Thus, Movants' motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Movants timely signed and submitted the requisite certifications, identifying all of their relevant Datavault AI trades during the Class Period, and detailing Movants' suitability to serve as Lead Plaintiff in this case. *See* Ex. B. The PSLRA's procedural requirements have therefore been met**.**

#### 2. Movants Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb); *see also Cendant*, 264 F.3d at 262-65.

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See In re Party City Sec. Litig.*, 189

F.R.D. 91, 105 (D.N.J. 1999). Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *See, e.g.*, *Roby v. Ocean Power Techs.*, No. 14-cv-3799 (FLW) (LHG), 2015 WL 1334320, at *5 (D.N.J. Mar. 17, 2015).

Overall, during the Class Period, Movants suffered losses of $252,756.61 attributable to the fraud. *See* Ex. C. Movants are presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3. Movants Meet Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B). When assessing a potential lead plaintiff only Rule 23(a)'s typicality and adequacy requirements are relevant. *See Cendant*, 264 F.3d at 264.

Typicality is established where each class member's claim "arises from the same event, practice or course of conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory." *Rabin v. John Doe Mkt. Makers*, 254 F. Supp. 3d 754, 759 (E.D. Pa. June 16, 2015). When evaluating typicality, courts inquire as to "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Id.* at 759-60 (citing *Beck v. Maximus*, 457 F.3d 291, 295-96 (3d Cir. 2006)).

Movants' claims are clearly typical of the Class's claims. Movants purchased Datavault AI securities during the Class Period, suffered damages as a result of the Company's false and misleading statements, and therefore can assert the Class's claims against Defendants under the federal securities laws. Because the factual and legal bases of Movants' claims are similar to those of the Class's claims, Movants necessarily satisfies the typicality requirement. *See In re Party City*,

189 F.R.D. at 107 n.13; *Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279 (CM), 2011 WL 4343802, at *3 (S.D.N.Y. Sept. 9, 2011) (finding movant typical where "he suffered losses as a result of [the company's] false and misleading statements during the same period as other movants, plaintiffs, and potential class members, and [] he is alleging violations of the same provisions of the [Exchange Act], against the same defendants as the other parties").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole. *See Rabin*, 254 F. Supp. 3d at 760 (citing *Cendant*, 264 F.3d at 265-66).

As evidenced by the representations in their certifications, *see* Ex. B, Movants' interests are perfectly aligned with—and by no means antagonistic to—the Class. *See Rabin*, F. Supp. 3d at 760 ("Rabin has averred . . . that he has a financial interest in his claims."); *Lifestyle Invs.*, 2016 WL 3032684, at *7 (finding adequacy requirement met because the movant's interests were aligned with the class and he "hired experienced legal counsel"). Contemporaneously with the filing of the instant motion, Movants have submitted a Joint Declaration with additional information about themselves, their work and educational backgrounds, and experiences investing, clearly demonstrating their adequacy to represent class members. Ex. D. Sheppard has a degree in Computer Studies from Academy Canada. *Id.* ¶ 5. Sheppard is currently a Process Technician at Cargill. *Id.* ¶ 6. He has been investing in the stock market for approximately 5 years and manages his own investments. *Id.* ¶ 9. Weatherford has a Bachelor of Science in business from the University of Delaware. *Id.* ¶ 12. Weatherford has worked for Constellation Energy for approximately 20 years and is currently a Vice President of Sales. *Id.* ¶ 13. He has been investing

for approximately 45 years and made his own investment decisions with respect to his investments in Datavault AI. *Id*. ¶ 14.

Movants have also selected and retained highly competent counsel to litigate the claims on behalf of themselves and the Class. As explained below in Section III, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation. *See* Ex. E. Consequently, Movants are more than adequate to represent the Class and have every incentive to maximize the Class's recovery.

In light of the foregoing, Movants respectfully submit that they are the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## III. MOVANTS' SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Movants have selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. E; *see also Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions. The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases.").

For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (where, as sole lead counsel, the firm obtained final approval of $19.5 million settlement); *In re*

*Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv-02369-CBA-PK (E.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $13.95 million settlement); *Lowthorp v. Mesa Air Grp., Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *Wang v. Ampio Pharms., Inc.*, No. 22-cv-02105-WJM-MEH (D. Colo.) (where, as sole lead counsel, the firm obtained final approval of $3 million settlement); *Rudani v. Ideanomics, Inc.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD.*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, LTD.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtaining a recovery of more than $930 million for the benefit of the Company, and negotiating important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency); *In re Tellium Inc. Sec.*

*Litig.*, No. 3:02-cv-5878-FLW-JJH (D.N.J. 2006) (where the Faruqi Firm, as co-lead counsel and recovering a $5.5 million settlement); *In re Olsten Corp. Sec. Litig*., No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., In re Inovio Pharms, Inc. Sec. Litig.*, No. 2:26-cv-00803-GAW (E.D. Pa.) (appointed sole lead counsel for the class); *In re Blackrock TCP Cap. Corp. Sec. Litig.*, No. 2:26-cv-01102-AB-DFM (C.D. Cal.) (appointed sole lead counsel for the class); *In re Alight, Inc. Sec. Litig.*, No. 1:26-cv-02924 (N.D. Ill.) (appointed sole lead counsel for the class); *Salem v. Methode Electronics, Inc.*, No. 1:24-cv-07696 (N.D. Ill.) (appointed sole lead counsel for the class); *Labelle v. Future FinTech Group, Inc.*, No. 2:24-cv-00247-JXN-JSA (D.N.J.) (appointed sole lead counsel for the class and recently defeated defendants' motion to dismiss); *Clifton v. Willis*, No. 1:22-cv-03161-DDD-JPO (D. Colo.) (appointed sole lead counsel for the class of NewAge, Inc. shareholders and recently defeated in part defendants' motion to dismiss); *Johnson v. Luminar Techs., Inc.*, No. 6:23-cv-982-JSS-LHP (M.D. Fla.) (appointed sole lead counsel for the class, defeated defendants' motion to dismiss and recently reached a settlement of $5.5 million which is being reviewed by the court); *In re Revance Therapeutics, Inc. Sec. Litig.*, No. 3:21-cv-09585-AMO (N.D. Cal.) (appointed sole lead counsel for the class); and *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.) (appointed sole lead counsel for the class, obtained class certification, including for a class of investors who acquired Teva stock on the Tel Aviv Stock Exchange).

The Faruqi Firm is a minority-owned and woman-owned[5] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[6] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years.[7] The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

**CONCLUSION**

For the foregoing reasons, Movants respectfully request that the Court: (1) appoint them as Lead Plaintiff; (2) approve their selection of the Faruqi Firm as Lead Counsel for the putative Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: October 5, 2026

Respectfully submitted,

By: *s/ Timothy J. Peter*
Timothy J. Peter

---

5 *See* Ex. F (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business).

6 *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

7 *See* https://faruqilaw.com/attorneys-directory-for-securities-law-antitrust-lawyers-consumer-and-employment-law-firm/.

Timothy J. Peter (#306965)
**FARUQI & FARUQI, LLP**
1617 John F Kennedy Blvd. Suite #1550
Philadelphia, PA 19103
Telephone: 215-277-5770
Facsimile: 215-277-5771
Email: tpeter@faruqilaw.com

James M. Wilson, Jr. (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: jwilson@faruqilaw.com

Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff Christopher R. Sheppard and Brian Weatherford and [Proposed] Lead Counsel for the putative Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 5, 2026, I caused true and correct copies of the foregoing to be served on all counsel of record via CM/ECF.

Dated: October 5, 2026

By: s/ *Timothy J. Peter*
Timothy J. Peter