**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARLA ARAMOUNI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DATAVAULT AI INC., BRETT MOYER, NATHANIEL T. BRADLEY, and GARY WILLIAMS,<br><br>Defendants. | Case No. 2:26-cv-05548-JS |
| VAN ZENG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DATAVAULT AI INC., BRETT MOYER, NATHANIEL T. BRADLEY, and GARY WILLIAMS,<br><br>Defendants. | Case No. 2:26-cv-07424-JS |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DOUGLAS DOW FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ......................................................................................3

ARGUMENT ...........................................................................................................6

A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED ............................6

B. DOW SHOULD BE APPOINTED LEAD PLAINTIFF ........................................7

1. Dow Is Willing to Serve as Class Representative .......................................8

2. Dow Has the "Largest Financial Interest" ..................................................9

3. Dow Otherwise Satisfies Rule 23's Requirements ....................................10

4. Dow Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses .....................................................12

C. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ..........................................................................................13

CONCLUSION ......................................................................................................14

CERTIFICATE OF SERVICE ..............................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F.I.K. Holding SPRL v. Fass*,
216 F.R.D. 567 (D.N.J. 2003)....................9

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
No. CV 20-200, 2020 WL 815136 (E.D. Pa. Feb. 19, 2020)....................10, 12

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)....................11, 12

*City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*,
No. 2:23-CV-04146 (WJM), 2023 WL 8752436 (D.N.J. Dec. 19, 2023)....................13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....................9, 11, 12, 13

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)....................9

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998)....................9

*In re Vicuron Pharms., Inc. Sec. Litig.*,
225 F.R.D. 508 (E.D. Pa. 2004)....................9

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)....................9

*O'Meara v. Shift4 Payments, Inc.*,
No. 5:23-cv-03206-JFL, 2023 WL 7276491 (E.D. Pa. Nov. 3, 2023)....................6, 7

*Patel v. Coinbase Glob., Inc.*,
No. 22-4915 (BRM) (LDW), 2022 WL 17582549 (D.N.J. Dec. 12, 2022)....................6, 7

*Pelletier v. Endo Int'l PLC*,
316 F. Supp. 3d 846 (E.D. Pa. 2018)....................9

*Reid v. Hemispherx Biopharma, Inc.*,
No. 2:09-cv-05262-PD, 2010 WL 11707722 (E.D. Pa. Feb. 12, 2010)....................6, 7

**Statutes**

15 U.S.C. § 78u-4 ........................................................................................................ *passim*

Private Securities Litigation Reform Act of 1995 ............................................................. *passim*

Securities Exchange Act of 1934 ..........................................................................1, 7, 9, 11

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

Fed. R. Civ. P. 42 ..................................................................................................................1, 6

Douglas Dow ("Dow") respectfully submits this Memorandum of Law in support of his motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Dow as Lead Plaintiff on behalf of a class (the "Class") consisting of persons and entities that purchased or otherwise acquired Datavault AI Inc. ("Datavault AI" or the "Company") securities between September 4, 2024 and August 18, 2026, both dates inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") and Bronstein, Gewirtz & Grossman, LLC ("BG&G") as Co-Lead Counsel for the Class.[1]

## PRELIMINARY STATEMENT

The complaints in the Related Actions allege that the Defendants defrauded investors in violation of the Exchange Act. Datavault AI investors, including Dow, incurred significant losses following the disclosures of the Defendants' alleged fraud, which caused Datavault AI's share price to fall sharply, damaging Dow and other Datavault AI investors.

[1] On August 5, 2026, the first-filed of the Related Actions was filed in this District, styled *Aramouni v. Datavault AI Inc. et al.*, No. 2:26-cv-05548 ("*Aramouni*"), alleging a class period including all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired Datavault AI securities between September 4, 2024 and October 30, 2025, both dates inclusive. *See* Dkt. No. 1 ¶ 1. Then, on September 25, 2026, a second action alleging substantially the same wrongdoing as *Aramouni* against the same defendants was filed in this District, styled *Zeng v. Datavault AI Inc. et al.*, No. 2:26-cv-07424 ("*Zeng*"), alleging a larger class period including investors in a more limited subset of Datavault AI securities—specifically, all persons and entities who purchased or otherwise acquired Datavault AI common stock between September 4, 2024 and August 18, 2026, inclusive. *See Zeng*, Dkt. No. 1 ¶ 1. Therefore, without conceding that it is the appropriate class period, to avoid excluding any potential class members, this motion has adopted the larger class period alleged in *Zeng*.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the litigation and that satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Dow: (1) purchased 465,193 shares of Datavault AI common stock; (2) purchased 58,593 net shares of Datavault AI common stock as of the October 31, 2025 corrective disclosure alleged in the complaints in the Related Actions (*see* Dkt. No. 1 ¶¶ 9–10, 48–52; *Zeng*, Dkt. No. 1 ¶¶ 10–11, 50–55); (3) expended $94,844 in net funds on Datavault AI securities; and (4) as a result of the disclosure of the Defendants' alleged fraud, incurred losses of approximately $94,844. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A at *14. Accordingly, Dow believes that he has the largest financial interest in the relief sought in this litigation. Beyond his considerable financial interest, Dow also meets the applicable requirements of Rule 23 because his claims are typical of those of absent Class members and he will fairly and adequately represent the Class's interests.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Dow has selected Pomerantz and BG&G as Co-Lead Counsel for the Class. These firms and their attorneys are highly experienced in the areas of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Accordingly, Dow respectfully requests that the Court enter an order consolidating the Related Actions, appointing Dow as Lead Plaintiff for the Class, and approving his selection of Pomerantz and BG&G as Co-Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the complaints in the Related Actions, Datavault AI purportedly owns and operates data management platforms including its Datavault Platform, on which users may purchase or sell data tokenized using blockchain technology. Dkt. No. 1 ¶ 2.

Datavault AI was previously known as WiSA Technologies, Inc. ("WiSA"). *Id.* ¶ 3. On September 4, 2024, WiSA issued a press release announcing that it had agreed to acquire the intellectual property of Data Vault Holdings Inc. ("Data Vault Holdings"), including, *inter alia*, the Datavault Platform, for $210 million. *Id.* WiSA further announced that it intended to change its name to "Datavault Inc." and appoint Defendant Nathaniel T. Bradley ("Bradley") as its Chief Executive Officer. *See id.* Defendants did not disclose that, three years earlier, the SEC had sued Bradley over false statements issued by Parallax Health Sciences, Inc. ("Parallax"), where Bradley was an officer and director, or that Bradley had consented to a judgment including a $40,000 civil penalty and a three-year ban from participating in any penny stock offering. *See Zeng*, Dkt. No. 1 ¶ 4. Nor did Defendants disclose that Edward Withrow III ("Withrow"), named alongside Bradley as inventor on patents originally assigned to Data Vault Holdings, had pled guilty to making false statements during an SEC investigation of a stock manipulation scheme. *See id.*

On February 13, 2025, following its acquisition of the Datavault Platform, WiSA announced that it had changed its name to Datavault AI. Dkt. No. 1 ¶ 4.

On July 22, 2025, Datavault AI announced a corporate partnership with Burke Products ("Burke"), claiming that the partnership "stands to deliver 2025 Revenues from existing contracts of Burke's that have now been subcontracted to Datavault AI" and that Datavault AI was "uniquely positioned to deliver . . . new and innovative solutions" through "technological synergies" given the defense sector's "increas[ed] focus[] on secure data solutions, advanced tracking, and

predictive intelligence". *Id.* ¶ 5. On September 25, 2025, Datavault AI announced a corporate partnership with Scilex Holding Company ("Scilex"), pursuant to which the Company would receive a "$150 million strategic investment" from Scilex to "build a supercomputer and launch independent data exchanges" in the United States. *Id.* ¶ 6. On October 28, 2025, Datavault AI announced a corporate partnership with Nature's Miracle Holding Inc. ("Nature's Miracle"), pursuant to which the Company would license its Carbon Credit Tokenization System for a "non-refundable license fee of $2 million and a 35 percent royalty on all gross revenue generated through the licensed technology." *Id.* ¶ 7.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. *Id.* ¶ 8. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants had overstated the economic value to Datavault AI of its various corporate partnerships with, *inter alia*, Burke, Scilex, and Nature's Miracle; (ii) Defendants had overstated the volume of trading activity on the Datavault Platform, which was in fact minimal; (iii) the Company's undisclosed connections with Withrow, a convicted felon, when revealed, would cause Datavault AI to incur reputational harm; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times. *Id.*

The truth began to emerge on October 31, 2025, when Wolfpack Research published a short report on Datavault AI (the "Wolfpack Report"). *Id.* ¶ 9. The Wolfpack Report alleged, among other things, that Datavault AI was a "stock promotion" that relied on misleading press releases and "empty claims" concerning artificial intelligence, quantum computing, Web 3.0, and data monetization. *Id.* Wolfpack further alleged that (i) Datavault AI's press releases were filled with promotional buzzwords that did not reflect the Company's actual business operations,

(ii) Datavault AI's previously announced purported partnerships could not offer the economic upside that Defendants claimed they would, (iii) Burke's contracts concerned "run-of-the-mill equipment such as hoses, piping, fuses, and electrical connectors", undermining Datavault AI's claim that it was "uniquely positioned to deliver" solutions, and (iv) both Scilex and Nature's Miracle lacked the resources to fulfill their purported commitments pursuant to the partnerships Datavault AI had announced. *Id.* The Wolfpack Report also questioned the activity on the Company's blockchain marketplace, and raised concerns about Datavault AI's leadership and affiliations, including Defendant Bradley's past SEC charges for false statements concerning Parallax and Company leadership's alleged connections with convicted felon Withrow. *See id.*

On this news, Datavault AI's stock price fell $0.49 per share, or 19.44%, to close at $2.03 per share on October 31, 2025. *Id.* ¶ 10.

Defendants denied the allegations and warnings in the Wolfpack Report, and thereafter, they continued to make false and/or misleading statements and/or failed to disclose that: (i) Defendants had overstated the economic value to Datavault AI of its various corporate partnerships with, *e.g.*, Scilex, Burke, and Nature's Miracle; (ii) Defendants had overstated the status and volume of trading activity on the Datavault Platform, which was in fact minimal; and (iii) Defendants had misrepresented the Company's working capital and liquidity position, and the Company's ability to continue as a going concern had not been alleviated. *Zeng*, Dkt. No. 1 ¶ 12.

Then, on August 19, 2026, before the market opened, Datavault AI issued its financial results for the quarter ended June 30, 2026, announcing poor results including a loss of $0.12 per share, far worse than the expected $0.03 loss, and a net loss of $88 million for the quarter, more than twice the $37.1 million loss reported a year earlier. *See id.* ¶ 13.

On this news, Datavault AI's stock plummeted by 23.40% in a single day, on extremely high trading volume of more than 201 million shares as investors digested the $190 million revenue gap required to meet the full-year target, and further confirmation that, despite Defendants' prior assurances, the Company would not be launching its exchanges or "converting our contracted opportunities into commercial activity and recognized revenue" until the second half of 2026. *See id.* ¶ 14. The Company also announced that due to its net cash and liquidity position, "the substantial doubt about the Company's ability to continue as a going concern has not been alleviated." *See id.*

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Dow and other Class members have suffered significant losses and damages. *See* Dkt. No. 1 ¶ 11.

## ARGUMENT

### A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court "involve common questions of law ***or*** fact". *See* Fed. R. Civ. P. 42(a) (emphasis added); *O'Meara v. Shift4 Payments, Inc.*, No. 5:23-cv-03206-JFL, 2023 WL 7276491, at *2 (E.D. Pa. Nov. 3, 2023); *Reid v. Hemispherx Biopharma, Inc.*, No. 2:09-cv-05262-PD, 2010 WL 11707722, at *2 (E.D. Pa. Feb. 12, 2010); *Patel v. Coinbase Glob., Inc.*, No. 22-4915 (BRM) (LDW), 2022 WL 17582549, at *2 (D.N.J.

Dec. 12, 2022). Differences in defendants or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See Reid*, 2010 WL 11707722, at *2 (consolidating securities class actions with "identical legal claims" and "substantially similar" class periods); *Coinbase*, 2022 WL 17582549, at *2.

The Related Actions at issue here clearly involve common questions of law ***and*** fact. Each of the Related Actions has been filed in this District, alleging similar factual and legal grounds to support allegations of violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, by the same Defendants, arising from the public dissemination of false and misleading information to investors. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the prices of Datavault AI common stock and subsequently damaged the Class when the Company's stock price plummeted as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See O'Meara*, 2023 WL 7276491, at *2–3 (consolidating putative securities class actions that "are premised on the same wrongdoing" and have overlapping class periods); *Reid*, 2010 WL 11707722, at *2.

**B. DOW SHOULD BE APPOINTED LEAD PLAINTIFF**

Dow should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires a plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice, and to do so by the later of (1) 90 days after the date of publication or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B)(i)–(ii).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group of persons that: "(aa) has either filed the complaint or made a motion in response to a notice . . .; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Dow satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

#### 1. Dow Is Willing to Serve as Class Representative

On August 5, 2026, counsel for the plaintiff in the first-filed of the Related Actions (*i.e.*, *Aramouni*) caused the statutorily required Notice to be published via *ACCESS Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Datavault AI and other defendants, and advising investors in Datavault AI securities that they had until October 5, 2026—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed Lead Plaintiff. *See* Lieberman Decl., Ex. B at *2. Dow has filed the instant motion pursuant to the Notice, and he has submitted a sworn Certification attesting that he is willing to serve as representative for the Class, and to provide testimony at deposition and trial, if

necessary. *See id.*, Ex. C ¶ 4. Accordingly, Dow satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. Dow Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). To the best of his knowledge, Dow has the largest financial interest of any Datavault AI investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). In accord with other courts nationwide,[2] these so-called *Lax* factors have been adopted by courts in the Third Circuit, including in this District. *See, e.g.*, *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 848 (E.D. Pa. 2018); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 510 (E.D. Pa. 2004). Of the *Lax* factors, courts in the Third Circuit generally emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See, e.g.*, *Vicuron*, 225 F.R.D. at 511 (finding "the amount of financial loss is the most significant" *Lax* factor); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 572 (D.N.J. 2003) (equating financial interest with economic loss).

[2] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6–8 (E.D.N.Y. Mar. 2, 2007).

During the Class Period, Dow: (1) purchased 465,193 shares of Datavault AI common stock; (2) purchased 58,593 net shares of Datavault AI common stock as of the October 31, 2025 corrective disclosure alleged in the complaints in the Related Actions (*see* Dkt. No. 1 ¶¶ 9–10, 48–52; *Zeng*, Dkt. No. 1 ¶¶ 10–11, 50–55); (3) expended $94,844 in net funds on Datavault AI securities; and (4) as a result of the disclosure of the Defendants' alleged fraud, incurred losses of approximately $94,844. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A at *14. As such, Dow believes that he possesses the largest financial interest in the outcome of this litigation within the meaning of the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

#### 3. Dow Otherwise Satisfies Rule 23's Requirements

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"For the purposes of examining a motion for the appointment of lead plaintiff, the Rule 23 analysis 'should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy.' Indeed, 'the statutory structure and the legislative history suggest that the court's initial inquiry as to . . . the typicality and adequacy requirements need not be extensive.'" *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, No. CV 20-200, 2020 WL

815136, at *6 (E.D. Pa. Feb. 19, 2020) (internal citation omitted) (quoting *Cendant*, 264 F.3d at 263–64). Moreover, the complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Dow. *See* Dkt. No. 1 ¶¶ 58, 61; *Zeng*, Dkt. No. 1 ¶¶ 91, 94.

Rule 23(a)(3)'s typicality requirement is satisfied where "'the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006). "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id.* (alteration in original) (internal quotation marks omitted).

Dow's claims are typical of those of the Class. Dow alleges, like other Class members, that the Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Datavault AI, or by omitting to state material facts necessary to make the statements they did make not misleading. Dow, like other Class members, purchased or otherwise acquired Datavault AI securities during the Class Period at prices alleged to have been artificially inflated by the Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Datavault AI's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

Rule 23(a)(4)'s adequacy of representation requirement is satisfied where it is established that the representative parties "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Further, "[w]hen assessing a movant's adequacy to be lead plaintiff, 'courts

should consider whether [the movant] has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class.'" *Allegheny*, 2020 WL 815136, at *7 (quoting *Cendant*, 264 F.3d at 265); *see also Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997))).

Dow is an adequate representative for the Class. As set forth in greater detail below, in Pomerantz and BG&G, Dow has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits his choice of Pomerantz and BG&G to the Court for approval as Co-Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Dow's interests and those of the Class. Moreover, Dow has submitted a sworn Certification declaring his commitment to protecting the interests of the Class (*see* Lieberman Decl., Ex. C ¶ 4), and his significant losses incurred as a result of the Defendants' alleged malfeasance demonstrates that he has a sufficient interest in this litigation to ensure vigorous advocacy on behalf of the Class.

Further demonstrating his adequacy, Dow has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* Lieberman Decl., Ex. D ¶¶ 2–7, 9–11.

#### 4. Dow Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption favoring Dow's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

"(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Dow's ability and desire to fairly and adequately represent the Class has been discussed above. Dow is not aware of any unique defenses the Defendants could raise that would render him inadequate to represent the Class. Accordingly, Dow should be appointed Lead Plaintiff for the Class.

### C. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See id.* § 78u-4(a)(3)(B)(v). The Court should not interfere with a lead plaintiff's selection unless it is necessary to do so to "protect the interests of the class" (15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)). *See City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*, No. 2:23-CV-04146 (WJM), 2023 WL 8752436, at *3 (D.N.J. Dec. 19, 2023) ("A court should defer to the properly-selected lead plaintiff's choice of counsel, intervening only when 'necessary to protect the interests of the class.'" (quoting *Cendant*, 264 F.3d at 274)).

Here, Dow has selected Pomerantz and BG&G as Co-Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See* Lieberman Decl., Ex. E at 1–12. In overview, Pomerantz is a premier firm in the area of securities litigation, and has represented defrauded investors for more than 85 years. *See id.* at 1. As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id.* at 2. Petrobras is part of

a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* at 2–7. More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.* at 7.

BG&G is also highly experienced in the areas of securities litigation and class actions, having served in co-lead or executive positions in: *Lerman v. Apple, Inc.*, No. 15-CV-07381 (E.D.N.Y.) (co-lead counsel; $20 million settlement of class action by New York and New Jersey iPhone 4S owners); *In re Flint, Mich. Water Crisis Litigation*, No. 16-CV-10444 (E.D. Mich.) (Plaintiff Exec. Comm. Member; global settlement with State of Michigan for approx. $600 million); and *Duncan et. al v. Joy Global Inc*., No. 2:16-cv-1229-PP (E.D. Wis.) (co-lead counsel in securities class action; $20 million settlement for the class). *See id.*, Ex. F at 18, 20.

As a result of their extensive experience in litigation involving issues similar to those raised in the Related Actions, Dow's counsel, Pomerantz and BG&G, have the skill, knowledge, expertise, and experience that will enable them to prosecute the Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Dow's selection of Pomerantz and BG&G as Co-Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Dow respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Dow as Lead Plaintiff for the Class; and (3) approving his selection of Pomerantz and BG&G as Co-Lead Counsel for the Class.

Dated: October 5, 2026 Respectfully submitted,

DONOVAN LITIGATION GROUP, LLC

*s/ Michael D. Donovan*
Michael D. Donovan (SBN 51895)
1885 Swedesford Road
Malvern, PA 19355
Telephone: (610) 647-6067
mdonovan@donovanlitigationgroup.com

*Liaison Counsel for Douglas Dow*

POMERANTZ LLP
Jeremy A. Lieberman*
J. Alexander Hood II*
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein*
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296

*Counsel for Douglas Dow and Proposed Co-Lead Counsel for the Class*

**Pro hac vice* application forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants. The foregoing is available for viewing and downloading from the CM/ECF system.

Dated: October 5, 2026

*s/ Michael D. Donovan*
Michael D. Donovan